## WILLIAM W. BELL

v.

## ROBERT M. CHERRIE ET AL.

EXCESSIVE DAMAGES.—The court is of opinion that the damages awarded in this case, in any view of the evidence, are excessive, and therefore the case is reversed.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed February 8, 1881.

Mr. F. A. SMITH, for appellant.

Mr. FREDERICK ULLMAN, for appellees; that where a cause is tried by the court, the finding of the judge as to the facts has the same effect as the verdict of a jury, cited Field v. C. & R. I. R. R. Co. 71 Ill. 458; Ambs v. Honore, 24 Ill. 122; Eastman v. Brown, 32 Ill. 53; Wood v. Price, 46 Ill. 435.

The verdict of a jury will not be disturbed, even where the evidence is conflicting, unless it is apparent it was actuated by passion or prejudice: Miller v. Balthasser, 78 Ill. 202; Plummer v. Rigdon, 78 Ill. 222; Warren v. Tyler, 81 Ill. 13.

BAILEY J. This was an action of assumpsit, brought by the appellees against the appellant, to recover damages for the non-performance of a contract for the sale and delivery by him to them of one hundred and seventy tons of Scotch pig-iron. The evidence shows that the defendant, having purchased five hundred tons of said iron on speculation, and having disposed of all of it but one hundred and seventy tons, called on several parties in Chicago for the purpose of trying to sell said iron, among whom were Rogers & Co., dealers in iron and coal. To this firm he seems to have made several visits, at one of which a Mr. Fleming, an employe of the firm, was directed to attend to him. Defendant and Fleming immediately recognized each other as old schoolmates, and all subsequent interviews in relation to said iron at the office of Rogers & Co. were between them.

In the course of these interviews, Fleming communicated to
defendant several offers for the iron, which defendant declined
to accept; the last of these offers being one of $36 per ton for
the one hundred and seventy tons.   In the afternoon of the
same day on which the last offer was made, defendant called on
Fleming at the office of Rogers & Co., and according to his
testimony, told Fleming that he had sent out letters and tele-
grams to various parties asking for offers for the iron, and
thought that by the next day he would hear from some of
them, and know whether they wished to purchase; and it was
then agreed between him and Fleming, that he should have
the next day to make sale of the iron, or a portion of it, to the
parties with whom he was in correspondence, and that for so
much as remained unsold on the morning of the second day,
he would accept the offer of $36 per ton.

Fleming gives a different account of this interview.   He
testifies that defendant came to the office and inquired whether
the offer of $36 per ton was still open, and was told by Flem-
ing that he supposed it was, as it had not been withdrawn.
Defendant then agreed to accept the offer, but as he had letters
out which might result in his getting offers for one, two or
three car loads at a better price, he would like to reserve the
right if he should get orders for that amount, before the morn-
ing of the second day thereafter, to fill them.   To this Flem-
ing assented, and reported the trade in that form to the plain-
tiffs, the parties who had made the offer.

Before the expiration of the time thus limited, defendant
disposed of the entire one hundred and seventy tons to the
parties to whom he had sent letters and telegrams, and on the
morning of the second day, reported such sales to Fleming.
On the same day the plaintiffs tendered to the defendant pay-
ment in full for the one hundred and seventy tons, and de-
manded the delivery of the iron to them, which being refused,
this suit was brought.   On the trial before the court without
a jury, the issues were found for the plaintiffs, and their dam-
ages assessed at $340, for which sum and costs the plaintiffs
had judgment.

There is some trifling discrepancy in the evidence as to the

market value of the iron in controversy at the time said demand was made, but the clear preponderance of the evidence, as it seems to us, fixes it at not to exceed $38 per ton; and it is apparent from the record, that the court, in assessing the plaintiff's damages, gave him $2 per ton for the entire one hundred and seventy tons.

As to what the contract sought to be enforced in this case really was, the evidence, as we have seen, is conflicting. The view we are inclined to take of the case, however, renders it unnecessary for us to determine as to which of these witnesses has given the most satisfactory and reliable account of the transaction. Even taking Fleming's version as the true one, it is manifest that the judgment is for too large an amount. He admits that the defendant reserved a right to dispose of as many as three car loads, or thirty tons, to other parties, and the plaintiff, at most, obtained the right to demand one hundred and forty tons absolutely, and the other thirty tons only in case the defendant failed to dispose of the same to other parties. That he made such disposition of the same is beyond dispute; consequently, the plaintiffs had no right to demand more than one hundred and forty tons, in any view that may be taken of the evidence; and their damages could not have exceeded $280; the amount awarded them manifestly included damages for the thirty tons, and to that extent the damages are excessive.

The judgment will therefore be reversed and the cause remanded.

Reversed and remanded.